David POTTLE

v.

BATH IRON WORKS CORP. and Commercial Union Insurance Co. and Liberty Mutual Insurance Co.

Supreme Judicial Court of Maine.

Argued Sept. 21, 1988.
Decided Dec. 7, 1988.

Mark Susi, Farris & Susi, Gardiner, for plaintiff.

William O. LaCasse (orally), Norman, Hanson & Detroy, Portland, for Commercial Union Ins. Co.

Eve Cimmet (orally), Richardson & Troubh, Portland, for Liberty Mut. Ins. Co.

Before McKUSICK, C.J., and
ROBERTS, WATHEN, GLASSMAN,
CLIFFORD, and HORNBY, JJ.

McKUSICK, Chief Justice.

This appeal involves that part of the two-year statute of limitations for workers' compensation claims, 39 M.R.S.A. § 95 (Pamph.1988), that measures the limitations period from the date "of any payment by such employer or insurer for benefits otherwise required by this Act."[1] The Workers' Compensation Commission ruled, and the Appellate Division affirmed, that the statute was tolled on a compensation claim for a 1980 work-related injury by reason of the providing of benefits to the injured employee after a 1982 work-related injury. Those post–1982 benefits consisted, first, of treatment at the employer's in-house health facility and, second, of weekly compensation paid by a carrier different from the one insuring the employer in 1980. We conclude that on the record before us it was an error of law to find that the statute of limitations on the 1980 injury was tolled. We order the modification of the Commission's decision accordingly.

On June 9, 1980, David Pottle injured his left knee while at work at Bath Iron Works Corp. (BIW). He received medical treatment and surgery for the injury. Commercial Union Insurance Co., BIW's compensation carrier at the time of the 1980 injury, paid for that treatment and surgery, without the filing of any petition or agreement. Commercial Union made its last payment of any kind with respect to the 1980 injury in August 1982.

On August 25, 1982, Pottle again injured his left knee while at work at BIW. As a result he went to BIW's industrial health department to be treated for that new injury and he continued to receive that in-house treatment of his left knee until near the time he filed the petitions commencing the present proceedings. As a result of that second injury, Pottle also was paid weekly compensation benefits by Liberty Mutual Insurance Co., which had become BIW's workers' compensation insurer prior to August 25, 1982.

On October 15, 1985, Pottle filed two petitions for permanent impairment of his left knee, one against BIW and Commercial Union for the 1980 injury and one against BIW and Liberty Mutual for the 1982 injury. In its answer, Commercial Union raised as a defense the two-year statute of limitations of section 95.[2] The hearing commissioner found that Pottle had a 10% permanent impairment to his left knee and, pursuant to 39 M.R.S.A. § 104–B(2) (Pamph.1988), ruled that Liberty Mutual, as the insurer providing coverage at the time of the last injury, was initially responsible for paying the whole award. But because the commissioner found that the 1980 injury contributed to the overall impairment, the commissioner apportioned the award equally between Commercial Union and Liberty Mutual. Regarding Commercial Union's statute of limitations defense, the commissioner found 1) that "ongoing medical treatment provided [to Pottle's left knee] at Bath Iron Works [within two years before October 15, 1985] serve[d] to toll the statute of limitations," and 2) that, "[i]ndependently, the payments of compensation by Liberty Mutual [subsequent to the 1982 injury] also toll[ed] the statute of limitations" with respect to Commercial Union and the 1980 injury.

---

1. 39 M.R.S.A. § 95 (Pamph.1988) provides in pertinent part:

Any employee's claim for compensation under this Act shall be barred unless an agreement or a petition ... shall be filed within 2 years after the date of the injury, or, if the employee is paid by the employer or the insurer, without the filing of any petition or agreement, *within 2 years of any payment by*

*such employer or insurer for benefits otherwise required* by this Act.

(Emphasis added). Section 95 as in effect on the date of the 1980 injury involved in the case at bar differed from its present form in respects not here relevant. *See* 39 M.R.S.A. § 95 (1978).

2. Liberty Mutual raised no statute of limitations defense.

On Commercial Union's appeal, the Appellate Division affirmed, agreeing with the hearing commissioner that BIW's provision of in-house treatment to Pottle's left knee after the second injury tolled the statute of limitations as to the first injury. The Appellate Division did not reach the second ground for the commissioner's tolling decision.

Since the Appellate Division acted as an intermediate appellate tribunal, we review the hearing commissioner's decision directly for errors of law. *See Lagasse v. Hannaford Bros. Co.*, 497 A.2d 1112, 1119 (Me. 1985). We agree with Commercial Union that the hearing commissioner erred as a matter of law in concluding that in the circumstances here presented the two-year statute of limitations was tolled with respect to the 1980 injury.

First, on this record tolling could not result from the weekly compensation payments made by Liberty Mutual. Those payments were both made by Liberty Mutual and received by the employee on account of the 1982 injury. That injury having occurred while Liberty Mutual was BIW's compensation insurer, it was for Liberty Mutual to make compensation payments based on a determination that the injury was work-related. There is nothing in this record to show that Liberty Mutual's payments were made on account of the 1980 injury. Regardless of any prior injury or pre-existing condition, Liberty Mutual had an obligation to pay weekly compensation to Pottle once it recognized the 1982 injury to be work-related, *see Bryant v. Masters Machine Co.*, 444 A.2d 329, 334–35 (Me.1982); *Gagnon's Case*, 144 Me. 131, 133, 65 A.2d 6, 8 (1949); and Liberty Mutual had the obligation to make that full payment regardless of the possibility of subsequent apportionment, *see* 39 M.R.S.A. § 104–B(2). The fact alone of Liberty Mutual's payments on account of the 1982 injury did not put Commercial Union or BIW on any kind of notice of a claim by the employee for the 1980 injury. Nor could the action of Liberty Mutual in merely paying weekly compensation for the 1982 injury as it was legally obligated to do constitute a recognition by Commercial Union or BIW of a claim on account of the first injury. In these circumstances Liberty Mutual's weekly compensation payments on the second injury do not toll the statute of limitations on any 1980 injury claims. *See* 3 A. Larson, *Workmen's Compensation Law* § 78.43(e) (1988) ("Payment of compensation tolls the statute only as to the injury for which the payment is intended as compensation; it cannot toll the statute as to another injury received in a prior accident.").

Similar reasoning requires us also to reject the hearing commissioner's first basis for tolling the statute of limitations on the 1980 injury. Shortly after he suffered the fresh injury to his left knee on August 25, 1982, Pottle went to BIW's health department to get treatment for that injury. The fact Pottle suffered a separate and distinct injury to his left knee on August 25, 1982, admitted by Liberty Mutual in its answer to Pottle's compensation petition, raises the natural inference—in absence of anything in this record to the contrary—that Pottle's subsequent visits to BIW's health department for treatment of that knee were necessitated by the 1982 injury. That separate injury constituted by itself sufficient reason for Pottle thereafter to seek in-house help for his left knee. Without more, the employer and Commercial Union were not put on notice of a likely claim on account of the 1980 injury. We do not reach the ultimate question whether the treatment an employee receives at an employer's first aid facility for a single work-related injury will toll a workers' compensation statute of limitations on that injury. Whatever the answer may be to that question involving a single injury, the factual predicate necessary for linking the post–1982 in-house treatment of Pottle's left knee to the 1980 injury simply is not present on this record. Treatment of Pottle's left knee after the August 1982 injury does not *ipso facto* put anyone on notice of a potential claim for a prior injury. Even though the 1980 injury was later found to have contributed in some part to the permanent impairment of Pottle's left knee, that subsequently determined causative

connection does not provide the notice at the time of treatment that is required to toll the statute of limitations on 1980 claims.

In sum, on the facts of the present case, the two-year statute of limitations as to the 1980 injury to Pottle's left knee was not tolled either by the weekly compensation payments by Liberty Mutual on account of the 1982 injury or by the BIW in-house treatment given Pottle for that second injury. Liberty Mutual fails to establish any ground for its recouping any part of its liability arising out of the 1982 injury from Commercial Union.

The entry is:

Decision of the Appellate Division vacated.

Case remanded to the Appellate Division with instructions to modify the Commission's decision to deny Liberty Mutual Insurance Co. any right of apportionment against Commercial Union Insurance Co. and to affirm that decision as so modified.

It is further ordered that the employer pay to the employee $550.00 for counsel fees plus reasonable out-of-pocket expenses for this appeal.

ROBERTS, GLASSMAN and CLIFFORD, JJ., concur.

WATHEN, Justice, concurring separately.

Although I agree with the result reached by the Court, I disagree with the Court's analysis. The Commissioner found that the employee's impairment resulted from both the 1980 and 1982 injury and ordered apportionment. In my judgment that finding precludes the "natural inference" drawn by the Court that the employee's visits to BIW's health department were necessitated solely by the 1982 injury. I would address the issue presented by this case and hold that treatment received at an employer's first aid station does not toll the statute of limitations because it is not a "payment for benefits" within the meaning of 39 M.R.S.A. § 95.

HORNBY, Justice, dissenting.

This employee has a knee that is permanently injured as a result of two work-related accidents, the first occurring in 1980 and the second, aggravating the knee's condition, in 1982. Until 1985 he received medical treatments, payments for medical treatment and (commencing in 1982) weekly compensation benefits, all arranged for or provided by his employer. There is simply no factual basis for the Court's "natural inference" that all treatment after 1982 was related solely to the 1982 incident. Instead, as Justice Wathen observes, the Commission found specifically that both injuries contributed to his condition.

The Court seems to be concerned that the first insurance carrier had no notice that the second insurance carrier's payments might toll the statute of limitations, and indeed this case is a contest, not between employee and employer, but between two insurance carriers over sharing the risk. The statute of limitations, however, is written in terms of the employee's claim for compensation and Liberty Mutual, the second carrier, stands in his shoes through subrogation. Any change in carriers was of no concern to the employee.[1] So far as he was concerned, his employer arranged for various benefits until 1985 for a condition that (the Commission found) resulted from both the 1980 and 1982 events. The statute of limitations had not run against the employee with respect to the 1980 incident because the employer, through its carriers, had provided continuing voluntary payments. 39 M.R.S.A. § 95 (Pamph.1988). (If any notice was required, the burden should lie on the employer or its carrier to notify the employee that it was limiting the significance of its voluntary payments to the 1982 aggravation.) Since the statute of limitations had not run as to the employee, it had not run as to Liberty Mutual in its petition for apportionment.

---

1. The insurance carriers and the employer are perfectly capable of providing for such notice problems through contractual language.

I would therefore affirm the Commission's decision on the basis of the ongoing payments (the change of carriers being of no moment to the employee) and would not reach the issue whether employer-provided treatment at an industrial health department is equivalent to payment of benefits under 39 M.R.S.A. § 95 (Pamph.1988).