**William KLIMAS, Sr.**

v.

**GREAT NORTHERN PAPER CO. and Commercial Union Insurance Co.**

Supreme Judicial Court of Maine.

Argued Oct. 2, 1990.

Decided Nov. 8, 1990.

Jeffrey L. Cohen (orally), McTeague, Higbee, Libner, MacAdam, Case & Watson, Topsham, for the employee.

Wayne P. Doane (orally), Cuddy & Lanham, John Woodcock, Mitchell & Stearns, Bangor, for the employer.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD, COLLINS and BRODY, JJ.

McKUSICK, Chief Justice.

This workers' compensation case raises again an issue we addressed in *Pottle v. Bath Iron Works Corp.*, 551 A.2d 112 (Me.1988): When does a workers' compensation payment by an employer or its current insurer following a second injury have the effect of tolling the statute of limitations [1] on a claim on an earlier work-related

---

**1.** 39 M.R.S.A. § 95 (Supp.1989) provides for the following statutes of limitations:

Any employee's claim for compensation under this Act shall be barred unless an agree-

injury? In *Pottle* we held that such a payment by the second insurer did not toll the statute if neither the employer nor the first insurer was put on notice that the payment related to the first injury. We today hold that, conversely, a workers' compensation payment by an employer (now self-insured) with notice that the payment related in part to the first injury does toll the statute of limitations on first-injury claims against the employer as well as against its insurer at the time of the first injury. We remand this matter to the Workers' Compensation Commission to determine whether the employer in this case had notice of the causal connection between the first injury and the treatment following the second injury at the time it made payments under the Act.

On the 1986 petition of William Klimas, an employee of Great Northern Paper Company, the Workers' Compensation Commission awarded permanent impairment benefits of 36% against Great Northern and its insurer, Commercial Union Insurance Company, on account of a 1974 injury. On Commercial Union's appeal, the Appellate Division of the Workers' Compensation Commission reversed, holding that Klimas's petition was barred by the 10–year statute of limitations of 39 M.R.S.A. § 95 (Supp.1989). We conclude that the Appellate Division misapplied *Pottle*, and we vacate the Appellate Division's decision.

On June 18, 1974, Klimas twisted his right knee while working for Great Northern Paper Company in Millinocket. Pursuant to an approved agreement, Commercial Union, Great Northern's insurer in 1974, paid Klimas compensation and medical expenses, the last in 1975. Those expenses included travel payments to cover Klimas's visits to his physician in Bangor, Dr. Philip Kimball. Dr. Kimball sent regular reports to Great Northern's company physician, Dr. Irwin Hamlin.

Klimas again injured his right knee at work in June 1982 and as a result lost time and received substantial medical treatment from both Dr. Kimball and Great Northern's first-aid department. In 1982 Great Northern was self-insured and under an approved agreement paid Klimas's weekly compensation and medical expenses directly. Great Northern continued to reimburse Klimas for travel to his periodic check-ups with Dr. Kimball, and Dr. Hamlin received regular reports from Dr. Kimball, until Klimas retired in 1987.

On April 14, 1986, Klimas filed a petition against Commercial Union and Great Northern for compensation for permanent impairment of his right knee resulting from the 1974 injury. In its response Commercial Union, as Great Northern's insurer, pleaded the 10–year statute of limitations. A year later, Klimas filed a petition against Great Northern as self-insured for permanent impairment to his right knee resulting from the 1982 injury. Rejecting Commercial Union's statute of limitations defense, the hearing commissioner granted Klimas's petition for permanent impairment against Commercial Union and Great Northern, finding them liable for 36% impairment resulting from the 1974 injury. The commissioner also found Great Northern liable for 9% impairment from the 1982 injury. On Commercial Union's appeal, the Appellate Division reversed so far as the 1974 injury was concerned, on the ground that the record contained no evidence that Commercial Union had any notice of a causal connection between the treatment after the 1982 injury and the 1974 injury, and concluding therefrom that the 10–year statute of limitations was not tolled by Great Northern's post–1982 payment. On Klimas's appeal, we disagree with the Appellate Division's proposition that the absence of any notice to the 1974 insurer prevented the tolling of the statute.

ment or a petition ... shall be filed within 2 years after the date of the injury, or, if the employee is paid by the employer or the insurer, without the filing of any petition or agreement, within 2 years of any payment by such employer or insurer for benefits other-

wise required by this Act. ... No petition of any kind may be filed more than 10 years following the date of the latest payment made under this Act. ...

Recent amendments to section 95 are not relevant to the discussion here or in *Pottle.*

Klimas concedes that the last payment he received pursuant to the approved compensation agreement for his 1974 injury was a check issued by Commercial Union on March 20, 1975. He bases his argument for permanent impairment benefits from *Commercial Union* as Great Northern's insurer in 1974 on the tolling of the statute by post–1982 payments by Great Northern. In 1983, following the second injury to Klimas's right knee, Great Northern reimbursed Klimas for his travel expenses in going to Bangor for check-ups by Dr. Kimball. Klimas contends that under *Pottle,* the 10–year statute of limitations is tolled if Great Northern made those payments with contemporaneous notice that they were made for treatment that was in part necessitated by the 1974 injury.[2]

Klimas correctly reads *Pottle.* In that case the issue was whether the weekly compensation payments an employee received after a 1982 injury to his right knee tolled the 2–year statute of limitations[3] that would have otherwise barred his 1985 petition for permanent impairment resulting from a 1980 injury to the same knee. The payments following the 1982 injury were made by an insurer different from Bath Iron Works' insurer at the time of the 1980 injury. We noted that in the circumstances of the *Pottle* case the "payments [by the 1982 insurer] on account of the 1982 injury did not put [either the 1980 insurer] or BIW on any kind of notice of a claim by the employee for the 1980 injury." *Id.* at 114. The connection of the 1980

injury to the employee's permanent impairment was found only at some time after the 1982 insurer made the payments, causing us to point out that:

> Even though the 1980 injury was later found to have contributed in some part to the permanent impairment of Pottle's left knee, that subsequently determined causative connection does not provide the notice at the time of treatment that is required to toll the statute of limitations on 1980 claims.

*Id.* at 114–15.

As applied to the present case, *Pottle* stands for the proposition that the 10–year statute of limitations would be tolled if either Great Northern or its 1974 insurer, Commercial Union, had notice at the time payments were made that Klimas was still being treated for the 1974 injury. We disagree, however, with Klimas's argument that the record from the hearing before the Workers' Compensation Commission compels us to find such notice to Great Northern at least. The hearing commissioner's decision, issued before our opinion in *Pottle* was published, did not make the critical finding that Great Northern had that notice when it made the payments. Instead, the commissioner's decision was based on a post-hoc determination that all of the medical treatment that Klimas received after 1982 was at least partly related to the 1974 injury. Although the case on remand will be before a different hearing commissioner,[4] we nonetheless must remand; it is not

---

2. Klimas also argues that the first aid that he received from Great Northern after the 1982 injury tolled the statute of limitations. We have not yet determined whether first aid is a payment under the Act for the purposes of tolling either of the section 95 statutes of limitations. *See Bath Iron Works, Inc. v. Pottle,* 551 A.2d at 114. In comparison, section 52 of the Workers' Compensation Act clearly requires an employer to pay its employee for travel expenses incurred in obtaining medical treatment for a compensable injury. *See Chaples v. Gilco, Inc.,* 280 A.2d 546, 547 (Me.1971); *see also Moreau v. Zayre Corp.,* 408 A.2d 1289, 1294 (Me.1979). Because we have determined that a remand is necessary to find as a matter of fact whether any payments were made by Great Northern with contemporaneous notice of the causal connection between the 1974 injury and the post–1982 treat-

ment, we do not rule whether first-aid treatment had any effect on the 10–year statute.

Klimas raises no issue as to whether the weekly benefit and medical payments that Great Northern as self-insured made following the 1982 injury under an approved agreement might have tolled the statute of limitations on the claims resulting from the 1974 injury.

3. The 2–year statute is tolled by a payment that is "required by th[e] Act," a term that is similar, for our purposes, to the payment made "under th[e] Act" that tolls the 10–year statute. *See* n. 1 above.

4. The hearing commissioner who decided this case resigned from the Workers' Compensation Commission in January 1989 following her appointment to the District Court.

appropriate for us to make the required factual determinations of notice from the record before us. That job falls properly in the province of the trial tribunal that has specialized expertise and experience in evaluating workers' compensation claims. *See Dunton v. Eastern Fine Paper Co.,* 423 A.2d 512, 514–15 (Me.1980). Furthermore, on remand the commissioner may hold a hearing to receive additional evidence if the commissioner finds it appropriate after reviewing the existing record in light of the principles of law here delineated.

We emphasize that Klimas need only prove that Great Northern had the contemporaneous notice required by *Pottle.* If Great Northern made travel payments to Klimas with that notice, Klimas had done everything that he was required to do in order that the travel reimbursements constitute "payments made under th[e] Act" for the 1974 injury. *See* 39 M.R.S.A. §§ 63–64 (1989 & Supp.1989). Even if Commercial Union shows that it did not know that Great Northern had paid travel expenses with notice that they were in part required by the 1974 injury, that fact does not absolve Commercial Union from its responsibility for covering Great Northern's liability. By the Act, any workers' compensation insurance policy "guarantees the payment of the compensation ... as in this Act provided." 39 M.R.S.A. § 2(7) (1989). Commercial Union retained its liability as an insurer for the compensable risk it covered at the time of the 1974 injury. *See* 4 A. Larson, *Workmen's Compensation Law* § 92.23 (1990) ("once it is established that the carrier was on the risk at the time of the injury, the carrier is liable"). Although Commercial Union has an interest in avoiding stale claims, any quarrel it may have for not being informed of the fact, if it be the fact, that Great Northern made the 1983 travel payments with notice they related in part to the 1974 injury, should be with its insured, Great Northern, and not with the employee.

The entry is:

Decision of the Appellate Division vacated. Remanded to the Workers' Compensation Commission for further proceedings consistent with the opinion herein.

It is further ordered that Commercial Union Insurance Company shall pay the employee $750 for his attorney fees plus his reasonable out-of-pocket expenses for this appeal.

All concurring.