1997 ME 23

**Terry W. LISTER**

v.

**ROLAND'S SERVICE, INC., et al.**

Supreme Judicial Court of Maine.

Argued March 7, 1996.

Decided Feb. 12, 1997.

Norman G. Trask (orally), Currier & Trask, P.A., Presque Isle, for employee.

Nelson J. Larkins (orally), Preti, Flaherty, Beliveau & Pachios, LLP, Portland, Samuel W. Lanham, Jr. (orally), Cuddy & Lanham,

Bangor, Anne–Marie L. Storey (orally), Rella, Dostie & Tucker, P.A., Bangor, for employer & insurers.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, DANA, and LIPEZ, JJ.

LIPEZ, Justice.

[¶ 1] The employee, Terry W. Lister, appeals from a decision of the Workers' Compensation Board denying his petitions for award and fix related to an April 27, 1987 low-back injury. The injury occurred while his employer, Roland's Services, was insured by Hanover of Maine. The Board concluded that Lister's petitions relating to the April 1987 injury were barred by the statute of limitations. 39 M.R.S.A. § 95 (Supp.1992).[1] The Board also denied Lister's motion for findings of fact and we granted his petition for appellate review pursuant to 39–A M.R.S.A. § 322 (Supp.1996). We conclude as a matter of law that the employer failed to meet its burden of proof to show that Lister's petitions were time-barred for his April 27, 1987 injury, and therefore we vacate the Board's decision with respect to that injury.

[¶ 2] At the date of Lister's petition for award in 1992, section 95 provided, in pertinent part:

Any employee's claim for compensation under this Act is barred unless an agreement or a petition as provided in Section 94 is filed within 2 years after the date of the injury, or, if the employee is paid by the employer or the insurer, without the filing of any petition or agreement, within 2 years of any payment by such employer or insurer for benefits otherwise required by this Act. The 2–year period in which an employee may file a claim does not begin to run until the employee's employer, if the employer has actual knowledge of the inju-

---

1. Section 95 has been repealed and replaced by 39–A M.R.S.A. § 306 (Supp.1995). *Maine Workers' Compensation Act of 1992*, P.L.1991, ch. 885, §§ A–7, A–8 (effective January 1, 1993). The statement of legislative intent provides that "[s]o as not to alter benefits for injuries incurred before January 1, 1993, for matters in which the injury occurred prior to that date, all the provisions of this Act apply, except that . . . Title 39–A,

sections 211, 212, 213, 214, 215, 221, 306, and 325 do not apply." P.L.1991, ch. 885, § A–10. Section 306 is expressly listed as prospective in application and therefore does not apply retroactively to Lister's dates of injury. *Dumond v. Aroostook Van Lines*, 670 A.2d 939, 941 n. 1 (Me.1996); *Marchand v. Eastern Welding Co.*, 641 A.2d 190, 191, n. 1 (Me.1994).

ry, files a first report of injury as required by section 106 of the Act.... No petition of any kind may be filed more than 6 years following the date of the latest payment made under this Act. *For the purposes of this section, payments of benefits made by an employer or insurer pursuant to section 51–B or 52 are considered payments under a decision pursuant to a petition, unless a timely notice of controversy has been filed.*

39 M.R.S.A. § 95 (Supp.1992) (emphasis added).[2]

[¶ 3] As originally enacted in 1983, the last sentence of section 95 provided that "[f]or the purposes of this section, payments of benefits made by an employer or insurer pursuant to section 51–B shall be considered payments under a decision unless a timely notice of controversy has been filed." P.L. 1983, ch. 587, § 1. In 1989 the Legislature amended the last sentence of section 95 to provide that "payments of benefits made by an employer or insurer pursuant to section 51–B *or 52* are considered payments under a decision *pursuant to a petition* unless a timely notice of controversy has been filed." P.L. 1989, ch. 256, § 4 (effective September 30, 1989) (emphasis added). Lister contends that, pursuant to the last sentence of section 95, the payment of chiropractic treatment following the April 1987 injury constituted a "payment of benefits made by an employer or insurer pursuant to section 51–B or 52" and therefore must be "considered payments under a decision pursuant to a petition" obviating the two-year statute of limitations. *Rutter v. Allstate Auto. Ins. Co.,* 655 A.2d 1258, 1259–60 (Me.1995); *Danforth v. L.L. Bean, Inc.,* 624 A.2d 1231, 1232 (Me.1993); *Dobson v. Quinn Freight Lines, Inc.,* 415 A.2d 814, 816 (Me.1980). We agree that Lister is entitled to the protection of the 1989 amendment as long as his claim had not been extinguished at the time of the effective date of that amendment. *See* P.L.1989, ch. 256, § 4 (effective September 30, 1989). Because the effective date of the 1989 amendment

occurred later than two years after the April 27, 1987 injury, Lister must have received payment of medical expenses for that injury prior to April 27, 1989 in order to satisfy the two-year statute.

[¶ 4] The Board found that Lister received chiropractic treatment for the April 1987 injury in May 1987. There is also evidence suggesting that the chiropractor had been paid for all services provided until August 1989, including the chiropractic treatment provided in May 1987. Hanover contends that payment for the May 1987 treatment was made by New Hampshire Insurance Co., a previous workers' compensation insurer. As Hanover states in its brief, "[a] review of [the chiropractor's] deposition ... makes it clear that the insurer that paid his bill was ... New Hampshire ... and not Hanover" and the "affirmative evidence is that the New Hampshire ... payment of [the chiropractor's] bill was the only payment made on the record...." Hanover contends, however, that despite the evidence that Lister's medical expenses for the April 27, 1987 injury had been paid, payments by a previous insurer cannot toll the statute of limitations for a claim against Hanover. *Pottle v. Bath Iron Works Corp.,* 551 A.2d 112 (Me.1988). We disagree.

[¶ 5] In *Pottle,* we held that a subsequent insurer's payments for a 1982 left-knee injury did not toll the statute of limitations against a previous insurer at risk for a prior left-knee injury. 551 A.2d at 114. We stated that "[t]he fact alone of [the subsequent insurer's] payment on account of the 1982 injury did not put [the previous insurer or employer] on any kind of notice of a claim by the employee for the 1980 injury." *Id.* We addressed a similar issue in a more recent decision, *Klimas v. Great No. Paper Co.,* 582 A.2d 256, 258–59 (Me.1990). In that case, the employee suffered a work-injury to his right knee while his employer, Great Northern, was insured by Commercial Union, and a subsequent injury to the same knee while

**2.** The last sentence of section 95 was amended prior to Lister's filing of his petition for award to reduce the time limitation after the date of latest payment from 10 years to 6 years. P.L.1991, c. 615, § A–44 (effective October 17, 1991). Because Lister's petition was filed well within six years of the injuries, there is no issue regarding whether the six-year or the ten-year statute applies in this case. *Rutter v. Allstate Auto. Ins. Co.,* 655 A.2d 1258, 1259, n. 2 (Me.1995).

Great Northern was self-insured. *Id.* at 257. Commercial Union argued on appeal that payment by Great Northern while self-insured did not toll the ten-year statute against Commercial Union for the prior injury. *Id.* We held that payment by a subsequent insurer may toll the ten-year statute if payments were made "with contemporaneous notice that they were made for treatment that was in part necessitated by the" previous injury and we remanded the case for further findings on the issue of notice. *Id.* at 258–59. We emphasized that the employee need only show that the *employer* had notice that payments were necessitated in part by the prior injury, not that the previous insurer received notice of the payments:

> Even if Commercial Union shows that it did not know that Great Northern had paid travel expenses with notice that they were in part required by the 1974 injury, that fact does not absolve Commercial Union from its responsibility for covering Great Northern's liability.... Although Commercial Union has an interest in avoiding stale claims, any quarrel it may have for not being informed of the fact, if it be the fact, that Great Northern made the 1983 travel payments with notice they related in part to the 1974 injury, should be with its insured, Great Northern, and not with the employee.

*Id.* at 259.

■ [¶ 6] The facts in this case are distinguishable from the facts of *Pottle* and *Klimas.* In this case, Lister suffered an injury to his shoulder and upper back in 1984 while New Hampshire was the insurer. New Hampshire subsequently paid medical expenses for a later low-back injury that occurred in 1987 while Hanover was at risk. Unlike the situation in *Pottle* and *Klimas,* where the insurer was alleged to have paid medical expenses for a subsequent injury without notice that the payment also related to a prior injury to the same body part, New Hampshire paid medical expenses for a new injury to a separate body part. There was no danger, therefore, that New Hampshire's payment on behalf of the employer may have also related to a "hidden" prior injury. Here, the issue is whether payment of medical expenses for a new and separate injury by a previous insurer tolls the statute of limitations against a subsequent insurer at risk for that injury. We conclude that it does.

[¶ 7] As we stated in *Klimas,* an employer's liability for work-related injuries does not change when the employer unilaterally elects to change insurers, or to self-insure, and an employee is not required to separately notify each insurer, past or present, that may potentially have liability for a work-related injury or condition. 582 A.2d at 259. Although *Klimas* involved payments by a subsequent self-insured employer, the rationale of that decision applies to previous or subsequent insurers. An employee's duty to provide notice to an employer is no different in cases involving multiple insurers than it is in cases involving a single insurer. In this case, New Hampshire paid Lister's medical expenses resulting from a separate and distinct low-back injury that occurred in 1987. Whether Hanover received notice of this payment is an issue between Hanover and its insured. We conclude that the payment, if timely, was sufficient to toll the statute of limitations against Lister's employer and, consequently, Hanover, for that later injury.

■ [¶ 8] Because Hanover concedes that the prior insurer, New Hampshire, paid for Lister's chiropractic treatment rendered in May 1987, the only remaining issue is whether that payment was made prior to April 27, 1989. As the party raising the affirmative defense, Hanover bore the burden of proof on the statute of limitations issue. *Patriotti v. General Elec. Co.,* 587 A.2d 231, 232–33 (Me.1991) (employer bears the burden on the former ten-year statute of limitations); *Norton v. Penobscot Frozen Food Lockers, Inc.,* 295 A.2d 32, 33 (Me.1972) (statute of limitations is procedural, not jurisdictional, and may be waived). As we stated in *Patriotti,* "[b]ecause the critical fact question on the ten-year statute of limitations is the date of latest prior payment under the Act and because the employer is better placed to maintain that information, considerations of fairness and convenience dictate allocating the burden of proof to the employer." 587 A.2d at 233.

[¶ 9] The employer's burden in most cases is not onerous: "The employer need only show that its insurance company or companies had the coverage throughout the pertinent period, that it or they routinely maintained and preserved records of all payments made on claims during that period, and that the last payment on a claim by the employee was more than [two] years prior to the filing of the current claim." *Id.* While we recognize that it may be more difficult for the insurer to show the time of payment in cases involving payments by a different insurer, we do not agree that the increased difficulty justifies shifting the burden to the employee to show timeliness of payment. *Klimas* asserts the principle that employees should not be subject to varying burdens of proof on statute of limitations questions simply because their employers elect to change workers' compensation insurers. We therefore conclude that because Hanover failed to show that payment by New Hampshire was made after April 27, 1989, it failed to meet its burden of proof on the statute of limitations issue as a matter of law. Accordingly, we vacate the Board's denial of Lister's petitions relating to his back injury of April 27, 1987.[3]

The entry is:

The decision of the Workers' Compensation Board with respect to the back injury of April 27, 1987 is vacated; the decision is otherwise affirmed. Remanded to the Workers' Compensation Board for further proceedings consistent with the opinion herein.

---

**3.** Lister also raised an issue with respect to the Board's denial of his petitions relating to two hand-injuries allegedly occurring on January 29, 1987 and January 18, 1988. Although the issue was identified in the statement of the issues in Lister's brief, the hand-injuries were not discussed further in Lister's brief and were not argued on appeal. We therefore affirm the Board's decision with respect to those alleged injuries.