MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2025 ME 47
Docket:      WCB-24-163
Argued:      March 5, 2025
Decided:     June 3, 2025

Panel:       STANFILL, C.J., and MEAD, HORTON, LAWRENCE, and DOUGLAS, JJ.

KATHERINE STOVALL

v.

NEW ENGLAND TELEPHONE COMPANY et al.

HORTON, J.

[¶1] New England Telephone Company[1] and its insurer, Sedgwick Claims Management Services (collectively New England Telephone), appeal from a decision entered by the Appellate Division of the Workers' Compensation Board in favor of Katherine Stovall on her petition for restoration of benefits for a 1996 injury. New England Telephone argues that the Appellate Division erred by vacating a decision of an administrative law judge (*D. Pelletier, ALJ*) denying Stovall's petition as untimely.[2] We agree and therefore vacate the

---

[1] The name of New England Telephone Company changed to "Verizon" after the 1996 date of injury in this case.

[2] In addition to contending that Stovall's petition was untimely, New England Telephone argues that Stovall's petition is precluded by the doctrine of res judicata and, in the alternative, that the Appellate Division should have remanded the matter for the administrative law judge to adjudicate Stovall's petition. Our resolution of the appeal on timeliness grounds obviates the need to reach these arguments.

Appellate Division decision and remand for the Appellate Division to affirm the denial of Stovall's petition as time-barred.

## I. BACKGROUND

[¶2]  The following facts and procedure are drawn from the procedural record and the supported findings of the hearing officer and administrative law judges (ALJs)[3] who issued decisions on Stovall's petitions for award of benefits, reinstatement, and restoration of benefits in 2006, 2019, and 2023, and on New England Telephone's petition for review in 2011.  *See Michaud v. Caribou Ford-Mercury, Inc.*, 2024 ME 74, ¶ 2, 327 A.3d 38.

### A.    The Initial and Subsequent Injuries

[¶3]  In 1996, while employed at New England Telephone, Stovall began to experience pain in her right hand, fingers, and wrists due to a work-related injury.  By 1998, the pain had spread to both hands, wrists, and forearms, and she began receiving treatment.  Due to the pain, she took a leave of absence from work in May 1998.  She returned in 1999, took a medically recommended break for another issue, and then returned to work again in April 2000, restarting treatment for her hand and wrist pain after that.  On her treating

---

[3]  The title of the Board's presiding officers changed from "hearing officer" to "administrative law judge" in 2015.  *See* P.L. 2015, ch. 297 *passim* (effective Oct. 15, 2015) (codified at 2 M.R.S. § 6-E(6) (2025) and 39-A M.R.S. chs. 1, 3, 5, 7 (2025)).

physician's recommendation, Stovall ultimately stopped working on June 29, 2001, due to her pain. Stovall notified New England Telephone in a communication dated August 1, 2001, that "she had sustained a new injury/aggravation" as of June 29, 2001. The new injury affected the same parts of her body as were involved in the 1996 injury but caused more severe pain and other symptoms. After receiving notice of the new injury, New England Telephone failed to pay workers' compensation benefits within fourteen days and did not file a first report of injury, a notice of controversy, or a memorandum of payment. *See* 39-A M.R.S.A. § 205(2), (7) (Supp. 1996) (memorandum of payment and fourteen-day requirement); 39-A M.R.S.A. § 303 (Supp. 1996) (first report of injury); 39-A M.R.S.A. § 313 (Supp. 1996) (notice of controversy).

[¶4] In 2004, Stovall filed a petition for award of benefits for the 1996 injury, a petition for award of benefits for the 2001 injury, and a petition for reinstatement regarding the 2001 injury. On May 17, 2005, New England Telephone filed a memorandum of payment for the 1996 injury and began paying benefits.

**B.** **The 2006 and 2011 Hearing Officer Decrees**

[¶5] On February 27, 2006, a Board hearing officer (*Smith, HO*) held a hearing on all three of Stovall's petitions. Before the hearing began, in a conversation on the record among the hearing officer and counsel for Stovall and New England Telephone, it was agreed that any award of benefits resulting from the hearing would be for the 2001 injury only. New England Telephone contends that Stovall also agreed that New England Telephone did not have to file a petition for review in order to terminate its payments on the 1996 injury. Although Stovall denies such an agreement, it is undisputed that at the hearing she voluntarily withdrew her petition for award on the 1996 injury.

[¶6] Of note, one of the medical records discussed at the hearing was a physician's report on the results of a comprehensive examination of Stovall's condition conducted in July and August 2005. The report indicated that Stovall was asymptomatic and pain-free, had achieved maximum medical improvement, and had not experienced any permanent impairment due to the 2001 injury. During her testimony at the February 2006 hearing, Stovall was asked about the report and testified that during the examination, "I told [the examining physician] I wanted to get back to work and I thought I was ready to work and—and he said he couldn't see a reason for me not to."

[¶7]   In a decision dated August 6, 2006, the hearing officer denied Stovall's petition for reinstatement[4] but granted her petition for award based on the 2001 injury.  The hearing officer found that Stovall's 2001 injury was a "new gradual injury" that was an aggravation of the 1996 injury but that involved "much more serious symptoms than in the past."  The hearing officer noted that New England Telephone had violated its legal obligations by failing, without an adequate excuse, to pay Stovall benefits based on her 2001 average weekly wage within fourteen days after receiving notice of the injury.  The decision awarded Stovall total compensation benefits from the date of the 2001 injury to the date of the decision[5] and ongoing benefits thereafter at the rate of 40% of her previous total compensation.  The decision did not mention the physician's report about the 2005 comprehensive examination or Stovall's assertion that she felt "ready to work."  New England Telephone did not appeal from the decision.  Instead, as of August 6, 2006, it ceased its payments to

---

[4]  As reasons for denying the petition for reinstatement, the hearing officer noted that New England Telephone's obligation to reinstate had expired and that the only available positions were unsuitable, particularly given that Stovall's treating physician had continued to impose work restrictions in 2004.

[5]  The hearing officer also awarded Stovall $10,666.56 in fringe benefits.

Stovall for the 1996 injury and began paying benefits in connection with only the 2001 injury.

[¶8]  Four years later, on August 30, 2010, New England Telephone filed a petition for review, asserting that its obligation to pay benefits on the 2001 injury should cease in 2011 in light of the 520-week durational limit on compensation payments, *see* 39-A M.R.S. § 213(4) (2010).[6]  The hearing officer who had issued the 2006 decision held a hearing on New England Telephone's petition for review in June 2011.  The parties stipulated that the durational limit had been reached, but Stovall argued that she was eligible for continued benefits for permanent impairment, *see id.* § 213(1-A)(A).  On July 6, 2011, the hearing officer issued a decision granting the petition for review.

[¶9]  In the decision, the hearing officer found that Stovall had not received any treatment for the 2001 injury since 2005.  Although Stovall testified that she was still experiencing chronic pain and depression as a result of the 2001 injury, the hearing officer commented that "the record paints a

---

[6] We cite the version of 39-A M.R.S. § 213 that was published in the 2010 Maine Revised Statutes because it was in effect when the petition for review was filed.  Section 213 has since been amended. *See, e.g.*, P.L. 2017, ch. 288, § A-50 (emergency, effective July 15, 2017) (codified at 39-A M.R.S. § 213(4) (2025)).  Our later citation to 39-A M.R.S. § 205(9)(B), which governs the discontinuation of payments to an employee, is to the version of the statute in effect on August 6, 2006, when New England Telephone discontinued its payments to Stovall on the 1996 injury.  Section 205(9)(B) has since been amended.  *See, e.g.*, P.L. 2015, ch. 297, § 5 (effective Oct. 15, 2015) (codified at 39-A M.R.S. § 205(9)(B) (2025)).

contrary picture." The hearing officer found that Stovall's last date of treatment was in July 2005 and that she underwent an annual physical examination in August 2005 "without reference to her injury." The hearing officer did not credit Stovall's assertion that she had received a recent prescription for wrist splints, noting that her testimony and the absence of documentation for the prescription raised "new issues regarding credibility."

[¶10] The hearing officer deemed "the most persuasive evidence" in the record to be the examining physician's report from 2005 that was briefly discussed with Stovall at the 2006 hearing. Noting that the medical conclusions in the report were "not refuted," the hearing officer adopted the examining physician's conclusions that Stovall had achieved "maximum medical improvement" from the 2001 injury in 2002, that she was asymptomatic and pain-free, and that she had no permanent impairment, *see* 39-A M.R.S. § 102(16) (2025) ("'Permanent impairment' means any anatomic or functional abnormality or loss existing after the date of maximum medical improvement that results from the injury."). Rejecting Stovall's contention that she was still experiencing pain, depression, and other symptoms as a result of the 2001 injury, the hearing officer concluded that she had not met her burden of production to show a genuine issue as to a level of permanent impairment at or

above the threshold at which she would be entitled to benefits. Stovall did not appeal from the hearing officer's decision.

## C.  The Petition for Restoration

[¶11] On June 30, 2017, one week short of six years after the July 6, 2011, hearing officer decision, Stovall filed a petition for restoration of benefits for her 1996 injury. In connection with the petition, Stovall asserted that she was entitled to continued benefits because New England Telephone failed to comply with 39-A M.R.S. § 205(9)(B) (2006) in 2006 when it discontinued payments on the 1996 injury after she had withdrawn her petition for award of benefits for the injury. She further asserted that, after crediting the payments she had received for the 2001 injury, she was entitled to 60% of her total incapacity benefits from August 6, 2006, to July 6, 2011, and 100% thereafter.

### 1.  The 2019 ALJ Decision and Subsequent Appeal

[¶12] In a decision dated January 17, 2019, the assigned ALJ (*McElwee, ALJ*) denied the petition. Based on the hearing officer's findings in the 2011 decision, the ALJ noted that "the 2001 injury was a significant aggravation, *but an aggravation only*, of the 1996 injury," and concluded that "absent any evidence whatsoever that the combined effects of the separate injuries could be divided in any way . . . they became the *same condition* at the time of the

second injury." Accordingly, the ALJ concluded that New England Telephone's "petition for review of incapacity . . . was, in fact, [in] satisfaction of the requirements of § 205(9)(B)(2) to terminate benefits *for both injuries*; and that such benefits were properly terminated by the 7/6/11 decision."[7] The ALJ denied Stovall's motion for further findings of fact and conclusions of law, and Stovall appealed, *see* 39-A M.R.S. § 321-B (2025).

[¶13] The Appellate Division vacated the ALJ's decision in December 2021 on the ground that, in concluding that the 2011 decision terminated Stovall's benefits for both injuries, the ALJ had misapplied the doctrines of res judicata and laches. The Appellate Division ruled that the 2011 decision terminated benefits for the 2001 injury only, reasoning that "[i]n Workers' Compensation proceedings, *res judicata* is read narrowly to preclude only issues actually litigated."[8]

---

[7] The ALJ also concluded that, in the absence of evidence that Stovall's condition changed between the 2011 ruling and 2017, when she filed her petition, her claim was barred by laches. On appeal, the Appellate Division held that laches is inapplicable in a workers' compensation proceeding.

[8] Citing *Spencer's Case*, 123 Me. 46, 47, 121 A. 236, 236 (1923), and *Wacome v. Paul Mushero Constr. Co.*, 498 A.2d 593 (Me. 1985), for its conclusion, the Appellate Division declined to follow our more recent workers' compensation decisions incorporating the "might have been litigated" standard, *see Somers v. S.D. Warren Co.*, 2020 ME 137, ¶ 10, 242 A.3d 1091; *Johnson v. Shaw's Distrib. Ctr.*, 2000 ME 191, ¶ 6, 760 A.2d 1057. A concurring member of the panel questioned the majority's analysis, suggesting that *Spencer's Case* and *Wacome* are distinguishable from Stovall's case because the later claim in both *Spencer's Case* and *Wacome* "involv[ed] a different body part than [the claim] adjudicated earlier." *See Spencer's Case,* 123 Me. at 47, 121 A. at 236 (new claim for thumb injury not precluded by previous claim involving injury to fingers); *Wacome*, 498. A.2d at 593-94 (new claim

[¶14] The Appellate Division remanded the matter for a determination of whether Stovall's claim "was [actually] litigated and adjudicated by prior board decisions and therefore barred" from review. The Appellate Division further instructed that if, on remand, the ALJ concluded that the doctrine of res judicata did not apply, the ALJ should consider whether Stovall's petition was timely and whether New England Telephone was authorized under 39-A M.R.S. § 205(9)(B)(2) to discontinue payments for the 1996 injury.

## 2.    The Proceedings After Remand

[¶15] On remand, a different ALJ (*D. Pelletier, ALJ*) was assigned. Stovall contended that her petition should be deemed timely because it was filed before the expiration of the period during which a petition must be filed when an employer has paid benefits for an injury. *See* 39-A M.R.S. § 306(2) (2025) ("If an employer or insurer pays benefits under this Act, . . . the period during which an employee or other interested party must file a petition is 6 years from the date of the most recent payment."). Although she filed her petition nearly eleven years after the benefit payments for the 1996 injury had ended, Stovall contended that the six-year statute had been tolled during the entire time New

---

for back injury not precluded by previous claim for foot injury). In light of our holding in this case, we need not decide the extent to which the doctrine of res judicata applies here.

England Telephone had been paying her benefits on the 2001 injury pursuant to the 2006 decision. Her argument relied on our decisions holding that "a workers' compensation payment by an employer . . . with notice that the payment related in part to the first injury does toll the statute of limitations on first-injury claims against the employer as well as against its insurer at the time of the first injury." *Klimas v. Great N. Paper Co.*, 582 A.2d 256, 257 (Me. 1990); *see also Pottle v. Bath Iron Works Corp.*, 551 A.2d 112, 114-15 (Me. 1988). Stovall contended that New England Telephone was on notice that its payments on the 2001 injury were related in part to the 1996 injury.

[¶16] The ALJ denied Stovall's petition. As to res judicata, the ALJ followed the Appellate Division's instruction to consider only whether Stovall's claim for the 1996 injury "was actually litigated and adjudicated in 2006 or 2011" and determined that her petition was not barred by the doctrine of res judicata. However, the ALJ concluded that the petition was time-barred because it was filed outside the statutory six-year period and Stovall had not met her burden under *Pottle* and *Klimas* to show that the running of the period was tolled. *See* 39-A M.R.S. § 306(2).

[¶17] Noting Stovall's argument that "all payments made by the employer for the 2001 injury which ended on July 6, 2011 placed the employer

on notice that the 1996 injury was continuing to play a role in the employee's condition," the ALJ found that Stovall had not supplied any medical evidence supporting her argument and that Stovall had not herself placed New England Telephone on notice.[9] The ALJ also noted the findings in the 2011 decision that Stovall was asymptomatic and pain-free as to the 2001 injury and had not seen her treating physician for her condition since 2005. The ALJ accordingly rejected Stovall's argument that New England Telephone had contemporaneous notice that its payments on the 2001 injury were in part related to the 1996 injury.

[¶18] After the decision was issued, the ALJ denied motions from both parties for further findings of fact and conclusions of law. The order denying Stovall's motion summarized the ALJ's reasoning as being that, because Stovall had been asymptomatic since 2002 as to the 2001 injury, "[i]t follows then that any symptoms related to the 1996 injury, presumably the underlying condition, ended in 2002 as well." Stovall appealed the ALJ's decision to the Appellate Division. *See* 39-A M.R.S. § 321-B.

---

[9] The ALJ also referred to an exchange of email messages in 2012 between Stovall and New England Telephone regarding Stovall's request to be reimbursed for a medical bill that she had paid in 1998. The ALJ found that New England Telephone issued Stovall a check referring to the 2001 injury and that Stovall requested that the check be reissued "with a 1998 injury date." New England Telephone refused, and Stovall never cashed the check. The ALJ noted that there was no payment that could even arguably have tolled the statutory period.

[¶19]   On March 28, 2024, the Appellate Division issued a written decision again vacating the ALJ decision and entered a decision in favor of Stovall.  The Appellate Division again concluded that the doctrine of res judicata did not bar Stovall's petition for restoration because "[i]n workers' compensation proceedings . . . *res judicata* is read narrowly to preclude the relitigation of issues actually litigated."[10]   The Appellate Division next concluded that Stovall's petition for restoration was not untimely under 39-A M.R.S. § 306(2).  The Appellate Division determined that there was sufficient record evidence, based primarily on the hearing officer's findings in the 2006 decision, that New England Telephone knew that the 1996 injury "contributed in some part" to its payments on the 2001 injury and that, therefore, the limitations period for the 1996 injury was tolled until July 6, 2011—when payments for the 2001 injury ended.  *See Pottle*, 551 A.2d at 114-15; *Klimas*, 582 A.2d at 258-59.

[¶20]   Rather than remanding the matter for the ALJ to determine whether Stovall had agreed at the beginning of the 2006 hearing that New England Telephone could discontinue payments on the 1996 injury, the

---

[10]  In its reasoning, the Appellate Division again relied on *Spencer's Case*, 123 Me. at 47, 121 A. at 236, and *Wacome*, 498 A.2d at 593, instead of our more recent decisions, *see supra* n.8.

Appellate Division in effect adjudicated that issue. It ruled that New England Telephone was not permitted to discontinue payments for the 1996 injury in 2006 because it did not file a petition to cease payments. *See* 39-A M.R.S. § 205(9)(B)(2).[11] Based on that conclusion, it awarded Stovall compensation for the 1996 injury "at the rate established by the 2005 memorandum of payment, from August 6, 2006, to the present and continuing, with a credit for benefits paid on Ms. Stovall's 2001 date of injury."

[¶21] New England Telephone petitioned for appellate review, *see* 39-A M.R.S. § 322 (2025); M.R. App. P. 23, and we granted its petition.

## II. DISCUSSION

### A. Standard of Review

[¶22] "In the workers' compensation context, . . . our role on appeal, like the Appellate Division's role, is limited by statute." *Potter v. Great Falls Ins. Co.*,

---

[11] Under the statute in effect at the time, 39-A M.R.S. § 205(9)(B) (2006), an employer could discontinue or reduce payments in two scenarios. First, if no compensation award or scheme had been established, compensation could be discontinued through a certificate sent by certified mail. *Id.* § 205(9)(B)(1). Second, if a compensation award or scheme had been established, including through a memorandum of payment, *see id.* § 205(7), the employer had to follow a formal process requiring a petition to the Board followed by "the dispute resolution procedures of [the Workers' Compensation] Act." *Id.* § 205(9)(B)(2). Section 205(9)(B) has since been amended, although the requirements for discontinuation of benefits remain essentially the same. *See, e.g.*, P.L. 2015, ch. 297, § 5 (effective Oct. 15, 2015) (codified at 39-A M.R.S. § 205(9)(B) (2025)).

Here, in electing to enter a decision for Stovall rather than to remand, the Appellate Division cited New England Telephone's failure to comply with section 205(9)(B)(2). We agree that an employer's failure to obtain authorization to discontinue the payment of benefits may support a petition for restoration of benefits, but it has no bearing on whether the petition for restoration is timely.

2020 ME 144, ¶ 17, 243 A.3d 1188 (citing 39-A M.R.S. §§ 318, 321-B(2), 322(3) (2020); M.R. App. P. 23(b)(3)). "We review decisions of the Appellate Division according to established principles of administrative law, except with regard to the ALJ's factual findings." *Michaud*, 2024 ME 74, ¶ 12, 327 A.3d 38 (quotation marks and alteration omitted). By statute, "[t]he administrative law judge's decision, in the absence of fraud, on all questions of fact is final; but if the administrative law judge expressly finds that any party has or has not sustained the party's burden of proof, that finding is considered a conclusion of law and is reviewable . . . ." 39-A M.R.S. § 318 (2025).

[¶23] We focus, as did the Appellate Division, on the ALJ's determination after remand that Stovall had failed to meet her burden to show that New England Telephone was on notice while making payments for the 2001 injury that the payments were made necessary to some extent by the continued effects of Stovall's 1996 injury. Our decisions beginning with *Pottle* define what constitutes notice as a matter of law, but as Stovall acknowledges, the issue of whether New England Telephone was on notice when it made payments for the 2001 injury is at least in part a question of fact. *See Boober v. Great N. Paper Co.*, 398 A.2d 371, 375 n.10 (Me. 1979); *Bradbury v. Inhabitants of Falmouth*, 18 Me. 64, 65 (1841) ("[W]hat is, or is not, reasonable notice, has been held to be a

question of law"; whether it has been provided is a question of fact). Although the ALJ's decision that Stovall did not sustain her burden of proof is subject to review, *see* 39-A M.R.S. § 318, neither we nor the Appellate Division may set the decision aside unless the record compelled the ALJ to decide in Stovall's favor. *See Leighton v. S.D. Warren Co.*, 2005 ME 111, ¶ 21, 883 A.2d 906; *Davidson v. Bancroft & Martin*, 560 A.2d 13, 14 (Me. 1989); *St. Pierre v. Morin Brick Co.*, 427 A.2d 492, 494 (Me. 1981).

## B.     The Legal Standard

[¶24]  The time limits for the filing of workers' compensation petitions are governed by the following statutory provisions:

> **1. Statute of Limitations.**  Except as provided in this section, a petition brought under this Act is barred unless filed within 2 years after the date of injury or the date the employee's employer files a required first report of injury if required in section 303, whichever is later.
>
> **2. Payment of benefits**.  If an employer or insurer pays benefits under this Act, with or without prejudice, within the period provided in subsection 1, the period during which an employee or other interested party must file a petition is 6 years from the date of the most recent payment.

39-A M.R.S § 306(1)-(2).[12]

---

[12]  Section 306(1) is, as its title indicates, a statute of limitations because the limitations period runs from the accrual of the workers' compensation claim.  Section 306(2) is a statute of repose—the six-year period runs from when the employer ceases to pay benefits.  *See State v. Tucci*, 2019 ME 51,

[¶25]  It is the six-year period in section 306(2) that is at issue here. Stovall's petition for restoration of benefits for the 1996 injury was filed nearly eleven years after payments on the 1996 injury ceased.  However, we have recognized that the statutory periods for filing petitions are tolled when an employer makes benefit payments for a subsequent injury with notice that the payments are "for treatment that was in part necessitated by the [prior] injury." *Klimas*, 582 A.2d at 258; *see also Pottle*, 551 A.2d at 114-15; *Leighton*, 2005 ME 111, ¶ 1, 883 A.2d 906.  In *Klimas,* we said, "*Pottle* stands for the proposition that the . . . statute of limitations would be tolled if either [the employer or its insurer] had notice at the time payments were made that [the employee] was still being treated for the [prior] injury." *Klimas*, 582 A.2d at 258.

[¶26]  In *Leighton*, we explained the allocation of the burden of proof and the rationale for the allocation:

> [T]he employee bears the burden of proof on the issue of whether the statute of limitations has been tolled.  After the employer submits evidence of a date of latest payment that [would render the petition untimely], and assuming that the hearing officer is persuaded by that evidence, if the employee claims that the statute was tolled, the burden shifts to the employee to establish that the employer or insurer had contemporaneous notice that payments

---

¶ 12 n.2, 206 A.3d 891 ("A statute of limitations governs the time within which an action must be commenced and begins to run when the cause of action accrues, whereas a statute of repose limits the time within which an action may be brought and is not related to the accrual of any cause of action.").

made within the limitations period but after a subsequent injury related in part to the prior injury.

Allocating the burden to the employee on this issue is supported by reasons of fairness and convenience. The employee is the party that has or can most readily gain control of the evidence required to establish that he or she had informed the employer or insurer that the current incapacity is attributable to both the prior and more recent injury. The employee can satisfy this burden by, for example, submitting medical records that attribute the onset of new symptoms at least in part to the prior injury, along with evidence that the insurer or employer had been made aware of the contents of the records at the time payments were made. Or, the employee could submit proof that he or she had asserted a belief to the employer at the time payments were being made that the older injury is at least in part responsible for the later incapacity.

*Leighton*, 2005 ME 111, ¶¶ 16-17, 883 A.2d 906.

[¶27] Applied here, our tolling jurisprudence required Stovall to prove that New England Telephone was on notice while paying benefits for her later injury that its payments related to both injuries because the prior injury still required treatment or still affected her condition, separately or in combination with the later injury.

## C. The Issue: Whether Stovall's Petition for Restoration Was Timely

[¶28] We turn to whether the Appellate Division correctly ruled that the record evidence compelled the ALJ after remand to decide that Stovall had met her burden. Because Stovall moved for findings after the ALJ's decision on remand, we may not infer that the ALJ made any findings beyond those

expressly stated in the decision.  *See Downing v. Dep't of Transp.*, 2012 ME 5,

¶ 19, 34 A.3d 1150.

[¶29]  The ALJ's decision after remand included the following findings:

- The 2006 decision described the 2001 injury as a new gradual injury that caused what Stovall's treating physician termed a significant aggravation of Stovall's condition, with "much more serious symptoms than in the past." (Quotation marks and emphasis omitted.)

- "The 2006 decision does not make any findings about whether the 1996 injury continued to play a role in part in [Stovall's] condition," and the issue was not raised.

- "[Stovall] did not supply any medical evidence supporting" her argument that New England Telephone was on notice that its payments related to the 1996 injury and did not testify that she had placed New England Telephone on notice.

- The 2005 examining physician's report stated that "[Stovall] had no pain. She has no neck pain, no shoulder pain, no elbow pain.  She denies any wrist pain." (Quotation marks omitted.)

- The hearing officer's 2011 decision "found that [Stovall] had last seen her own doctor for her wrists, arms, elbows and shoulders in 2005."[13]

[¶30]  In vacating the ALJ's decision on remand, the Appellate Division

noted that the 2006 hearing officer decision "found that Ms. Stovall gave notice

to New England Telephone on August 1, 2001, that 'she had sustained a new

---

[13]  The hearing officer's 2011 finding that Stovall had not received any treatment for the 2001 injury since 2005 does not bear directly on the issue of whether New England Telephone was on notice while making benefit payments, but it does support an inference that New England Telephone was never notified while making payments that Stovall was being treated for the 1996 injury.

injury/aggravation on June 29, 2001 of her prior injury.'" The Appellate Division also pointed out that the 2006 decision relied in part on Stovall's treating physician's opinion that Stovall's 2001 injury was "a significant aggravation of [Stovall's] underlying condition." (Quotation marks omitted.)

[¶31] That the 2001 injury was an aggravation of the 1996 injury did not necessarily serve to satisfy Stovall's burden. Stovall's burden was to show that while New England Telephone was making payments on the 2001 injury, it was on notice that the 1996 injury contributed to the necessity for workers' compensation benefits by requiring continued treatment, contributing to continuing impairment, or otherwise affecting Stovall's condition. In *Pottle,* the employee incurred successive injuries to his left knee, and after the employer had finished paying benefits for the later injury, it was established medically that the earlier injury had contributed to the permanent impairment of the knee. 551 A.2d at 113-15. We held that the employer was not on notice that its payments on the later injury related to the earlier injury because the contributing role of the earlier injury was not established until after the employer had finished paying benefits for the later injury. *Id.* at 114-15. In a sense, this case involves the opposite chronology.

[¶32] By virtue of Stovall's notice of injury in 2001 and the opinion of her treating physician, New England Telephone was on notice before paying any benefits on the 2001 injury that the 2001 injury was an aggravation of the 1996 injury. However, as the transcript of the 2006 hearing reveals, before starting payments on the 2001 injury, New England Telephone was also on notice of what the hearing officer termed the "persuasive" 2005 physician's report indicating that Stovall was asymptomatic, pain-free, and without any permanent impairment from the 2001 injury. Nothing in the record indicates that New England Telephone received notice to the contrary while paying benefits for the 2001 injury. Accordingly, there is little room for Stovall's argument that while paying benefits for the 2001 injury between 2006 and 2011, New England Telephone was on notice that the effects of the 1996 injury continued to require treatment or otherwise affect her condition although the effects of the more serious aggravating 2001 injury to precisely the same parts of her body had ended as of no later than 2005.

[¶33] Not only does the record evidence not compel a decision in Stovall's favor, it furnishes solid support for the ALJ's conclusion after remand that Stovall failed to prove that while making payments related to the 2001 injury New England Telephone was on notice that its payments also related to

the 1996 injury.  We vacate the decision of the Appellate Division and remand for entry of a decision affirming the ALJ's denial of Stovall's petition for restoration as time-barred.

The entry is:

> Decision vacated.  Remanded to the Appellate Division for entry of a decision affirming the denial of the petition for restoration of benefits.

---

Travis C. Rackliffe, Esq. (orally), and Kayla A. Estes, Esq., Tucker Law Group, Bangor, for appellants New England Telephone Co. et al.

Zachary J. Smith, Esq. (orally), Lawsmith Legal Services, L.L.C., Bangor, for appellee Katherine Stovall

Workers' Compensation Board Appellate Division case number 23-6
FOR CLERK REFERENCE ONLY